IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br>vs<br>**1) JOSE R. LUGO-GUERRERO**<br>2) OSCAR SOSA-DELGADO<br>3) ALEXANDER GUZMAN-DEL-VALLE<br>Defendants | CRIMINAL 05-0047CCC |

**O R D E R**

      Defendant, José Lugo-Guerrero, stands charged in a two-count indictment with robbing the Aguas Buenas branch of Banco Popular de Puerto Rico and using and carrying firearms in relation to that crime.  On July 29, 2005, the United States filed a Notice to Introduce 404 Evidence (**docket entry 57**) where it announced that it intended to use at trial statements made by defendant following his arrest where he admitted having participated in two other bank robberies and described how the robberies were planned, who participated, and  how the money was divided,  in order to show preparation, plan, knowledge and absence of mistake as allowed by Fed.R.Evid. 404(b).

      On August 1, 2005, defendant filed a Motion in Limine (**docket entry 59**) seeking exclusion of the announced 404(b) evidence claiming that its admission would provoke "excessive collateral litigation" and that the statements had been obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).  The government opposed the in limine request on August 12, 2005 (**docket entry 64**).  The matter was referred to U.S. Magistrate-Judge Delgado-Colón for a hearing, if deemed necessary, and report and recommendation (docket entry 62).  The Magistrate-Judge held a hearing on August 30, 2005, during which she received the testimony of two agents that had interviewed defendant, as well as of defendant (see docket entry 72).  Her Report and Recommendation was filed on October 14, 2005

CRIMINAL 05-0047CCC                 2

(**docket entry 86**), where after finding that the objected statements were validly obtained, and that they would be admissible at trial as Fed.R.Evid. 404(b) evidence, she recommended that the motion in limine be denied.

On November 18, 2005, defendant filed objections to the Report and Recommendation (**docket entry 91**), indicating that while he accepted "a substantial portion of the Magistrate's factual finding as correct, it disagrees with the legal consequences of such findings." Objections (docket entry 91), at p. 1. In her Report, the Magistrate-Judge had found that defendant, after being arrested by the Puerto Rico Police, was advised of his Miranda rights and declined to waive them, although he never asked to be assisted by counsel. He was then transferred to the custody of the Federal Bureau of Investigations (FBI) where an FBI task force agent started to ask him personal biographical and family data. During that conversation, defendant then expressed remorse and stated that his father and wife did not deserve what he was doing, regretted having lied to his wife, and expressed that his conduct would not be acceptable to his father who was a reverend. The task force agent mirandized him again, defendant waived all his rights in writing, and the incriminating statements followed. Defendant, relying in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), and Smith v. Illinois, 469 U.S. 91, 94 (1984), insists that since he had refused to waive his rights after the Puerto Rico police agent read them to him, and he had invoked his right to counsel, the FBI task force agent was impeded to re-initiate interrogation unless defendant himself resumed further communication with the police, which he never did.

It is apodictic, after Miranda v. Arizona and its progeny, that a person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must first "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S., at 444, 86 S.Ct. at 1612. The protections of Miranda were reinforced in Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1884-1885, 68 L.Ed.2d 378 (1981), which held that once the accused requests counsel, officials may not reinitiate questioning "until counsel has been made available" to him.

The problem with defendant's argument against the Magistrate-Judge's conclusions is that it is anchored on a fact which the Magistrate-Judge did not find proven: that after declining to waive his rights before the Puerto Rico Police agent, he requested counsel. The Magistrate-Judge did not give any credence to defendant's testimony on that regard, finding as entirely credible the assertions made by both testifying agents that defendant never asked for an attorney. Report and Recommendation (docket entry 86), at p. 17. Although defendant seems to suggest that his initial blanket refusal to waive his rights implied a request for counsel, that argument is unavailing. As the Supreme Court has explained, invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209 (1991). The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. U.S., 114 S.Ct. 2350, 2355 (1994). Merely refusing to waive his rights, which was the scenario that the Magistrate-Judge found proven here, cannot be interpreted as an unambiguous statement asserting the right to counsel.

While defendant neglected to expressly argue, and probably due to that omission the Magistrate-Judge did not discuss at all, whether his subsequent interview by the FBI task force agent after he had declined to waive his rights before the Puerto Rico Police officer failed to "scrupulously honor" his right to remain silent as required by Miranda, 384 U.S. at 479, we do not believe that was the case. In Michigan v. Mosley, 423 U.S. 96, 102-103, 96 S.Ct. 321 (1975), the Supreme Court clarified that Miranda cannot be read to create a per se proscription against any further questioning by any police officer, on any topic, once the suspect has expressed a wish to remain silent. To determine whether a suspect's right to cut off questioning was "scrupulously honored," Mosley established a multi-factor test that includes an inquiry into the amount of time that lapsed between interrogations, the scope of the second interrogation, whether new Miranda warnings were given, and the degree to which police officers pursued further interrogation once the suspect had invoked his right to silence. Id. Here, as in Mosley, the police immediately ceased interrogation upon the suspect's invocation of the right to remain silent; the police resumed questioning only after a significant amount of

time (more than two hours) had passed; and a fresh set of Miranda warnings had been provided. While in Mosley the second interrogation concerned a crime different from the one discussed at the earlier interrogation, after Mosley many courts have concluded that a second interview is not rendered invalid merely because it involved the same crime previously discussed in the first interview.  See United States v. Andrade, 135 F.3d 104, 106-07 (1st Cir.1998); Hatley v. Lockhart, 990 F.2d 1070, 1074 (8th Cir.1993); United States v. Hsu, 852 F.2d 407, 410 (9th Cir.1988); Jackson v. Dugger, 837 F.2d 1469, 1471-72 (11th Cir.1988); United States v. Smith, 608 F.2d 1011, 1014-15 (4th Cir.1979); Wilson v. Henderson, 584 F.2d 1185, 1188-89 (2d Cir.1978).  In any event, here the "second" interrogation on the same crime took place only after defendant had waived in writing all his rights, including his right to remain silent, which reversed his initial decision to remain silent.  Finally, the facts determined by the Magistrate-Judge do not portray a situation where the agents persisted in repeated efforts to wear down defendant's resistance to talk.  In sum, we find that defendant's right to remain silent was "scrupulously honored" as required by Miranda.

Thus, in the factual circumstances before us, after defendant was mirandized by the Puerto Rico Police agent and he declined to waive his rights, the agent acted correctly in stopping his interrogation.  As defendant had failed to request an attorney, however, once custody was transferred to the FBI task force agent he was not impeded from asking him general background questions which the agent described, as found by the Magistrate-Judge, as dealing only with "personal biographical and family data," since it is well-settled law that routine booking questions do not constitute interrogation protected by Miranda.  United States v. McLean, 409 F.3d 492, 498 (1st Cir. 2005); see also, e.g., Rosa v. McCray, 396 F.3d 210, 221 (2d Cir.2005).  Following this exchange, defendant was mirandized a second time, he waived his rights in writing, and the incriminating statements followed.  As the evidence established that those statements were obtained only after defendant had voluntarily and knowingly waived his rights, defendant's allegations to the contrary are dismissed.

Defendant has not objected to the additional conclusion reached by the Magistrate-Judge that his incriminating statements concerning his participation in two other bank robberies constitute admissible Fed.R.Evid. 404(b) evidence, so we need not address them.  L.Cv.R. 72(d).  Suffice to say that we concur with the Magistrate-Judge's appreciation that said

evidence is admissible under 404(b) since the modus operandi for each robbery was similar and defendant and one of his co-defendants participated in all three robberies, which would establish preparation, plan and knowledge, and the probative value of the evidence is not substantially outweighed by its prejudicial effect.

Accordingly, and for the reasons stated, the Magistrate-Judge's Report and Recommendation (**docket entry 86**) is APPROVED and defendant's Motion in Limine (**docket entry 59**) is DENIED.

The case will be reset for trial by separate Order.

SO ORDERED.

At San Juan, Puerto Rico, on February 2, 2006.

S/CARMEN CONSUELO CEREZO
United States District Judge